|   |   |   |
|---|---|---|
| M. Paul Weinstein, | | 2:16-cv-01076-JAD-VCF |
| Plaintiff | | **Order Granting Defendant's Motion to Dismiss** |
| v. | | [ECF No. 23] |
| Meritor, Inc., Does I through X, | | |
| Defendants | | |

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Plaintiff M. Paul Weinstein sues defendant Meritor, Inc. for allegedly reneging on an agreement to purchase an anti-corrosion coating product. Meritor moves to dismiss all claims. Because I find that Weinstein has failed to provide facts sufficient to state a claim, I grant Meritor's motion to dismiss with leave to amend.

## Background[1]

Meritor manufactures drivetrain, mobility, and braking components for trucks, buses, and trailers. In 2010, Zane McCarthy, the inventor of the anti-rust and anti-corrosion coating NanoWard® A (branded by Meritor as ZXP3) sold Dennis Reidel—who was Hydraulic Brake Product Manager of Meritor's Aftermarket Division at the time—a 1500-gallon container of ZXP3 and agreed that Meritor would have exclusive rights to use ZXP3 in the heavy-vehicle industry. But the Meritor Materials team "could not believe that McCarthy had come up with an acceptable corrosion solution after Meritor's engineers had failed to find one after spending years and millions of dollars trying." Meritor Chemist Troy Muransky subjected the coating to extensive testing but was unable to invalidate ZXP3. The product was approved and Meritor released brake rotors coated with ZXP3 to Aftermarket customers.

At some point after the 2010 contract was resolved, Weinstein acquired ownership of ZXP3 and retained McCarthy to help him market the products. In 2014, McCarthy reached out

---

[1] These facts are taken from Weinstein's amended complaint (ECF No. 20) and are not intended as findings of fact.

to Reidel to see if Meritor wished to restock its ZXP3 order. In July, Weinstein and McCarthy traveled to Troy, Michigan to meet with Reidel and purchasing representatives Sara Thomas and David Casteel to discuss a new purchase order. At that meeting, Thomas said that customers were eager to reorder ZXP3-coated rotors and that Meritor had selected a rotor manufacturer in China that needed to be supplied with ZXP3. Reidel stated that he planned on ordering one 1500-gallon container, at $250 per gallon, immediately. Thomas confirmed that since ZXP3 was already tested and approved in 2010, no further testing was necessary. The only thing left to do was "to set up ZXP3 in the computer so the written [purchase order] would issue." Weinstein consented to giving Meritor exclusive rights to use ZXP3 in the heavy vehicle industry "provided certain conditions were met." Thomas also mentioned the possibility of designating ZXP3 as Meritor's exclusive coating. McCarthy informed Thomas that he could offer a 10% discount on purchase orders of more than three containers. Reidel stated that he would check to see if Meritor could expand their order.

At the same meeting, McCarthy informed Thomas that he had developed another "more abrasion resistant anti-rust coating formula" called NanoWard® B that sold at the same price as ZXP3, but had not been tested on rotors yet. Thomas requested that Meritor test NanoWard® B on its rotors to determine if Meritor should purchase the product for its Original Equipment (OE) division as well as for Aftermarket. Reidel added that while Aftermarket customers were happy with ZXP3, he had no problem using NanoWard® B if Purchasing decided to choose it instead. Casteel said that he would "get with Troy Muransky right away" to conduct the NanoWard® B test. Weinstein and McCarthy expressed concern that Muransky would not give NanoWard® B a fair test, considering his attempts to invalidate ZXP3 in 2010. Weinstein therefore permitted Muransky to test NanoWard® B only if Meritor agreed to fully disclose Muransky's "test particulars, protocols, and requirements" so that he could hire an independent lab to simultaneously conduct identical testing.

In September, Reidel informed Weinstein that he had recommended coating "all brake rotors with a cast-in tone ring for both hydraulic brakes and air brakes" with ZXP3. If his recommendation was approved, this would result in a much larger ZXP3 order. Weinstein told

Reidel that for such an increased order, Weinstein would need to purchase additional material and expand his production facility. He asked Reidel if he could mention the potential increased orders to investors in order to finance the expansion. Reidel allowed Weinstein to do so, and offered to confirm that Aftermarket was a ZXP3 customer directly to prospective investors. At the end of September, Reidel informed Weinstein that his recommendation had been approved and that he would be ordering much more than one container of ZXP3 in February or March.

In October, Casteel asked if Weinstein could send rotors coated with NanoWard® B and ZXP3 to Muransky to conduct a side-by-side comparison test. Weinstein agreed, "but confirmed on the phone and in writing that this would not be a reapproval of [ZXP3] and that Aftermarket's order of [ZXP3] was not conditioned on the outcome of the comparison test." Although testing was not a condition to Aftermarket's order, Casteel "delayed issuing [the previously discussed purchase order] because[] the quantity discount was calculated on the total amount ordered on each [purchase order] and OE would not place its order until after choosing between [ZXP3] and NanoWard® B."

In January 2015, the rotors were coated and sent to Muransky for testing. Four rotors were retained for a control test by an independent lab that McCarthy selected. Muransky then provided McCarthy with "full disclosure" of the testing procedures that would be used so they could be replicated in the control test. However, Muransky did not disclose a requirement referred to as "MSP-105," which Weinstein alleges is a "secret, internal specification [that] was contrived so ZXP3 could not meet MSP-105's arbitrary requirements." In March, the independent lab report confirmed that both coatings passed its test.

In May, Muransky released a report "disparaging" both of Weinstein's coatings and representing that both failed to meet "the requirements of MSP-105." Meritor will not provide Weinstein with the MSP-105 specification despite numerous requests. After the report was released, Meritor "[went] silent" and refused to order ZXP3 and NanoWard® B.

Weinstein theorizes that Meritor has "gone silent" and refused to reorder ZXP3 because in 2010, after ZXP3 passed testing and was offered to Aftermarket customers, customers of Meritor's OE division began demanding ZXP3 on their new rotors as well as the replacement

rotors they purchased from Aftermarket. OE "didn't even try" to purchase ZXP3 for OE rotors, but instead "falsely represented" to OE customers that ZXP3 failed the secret MSP-105 specification and that the ZXP3 program had been cancelled. Instead, Meritor offered the OE customers rotors with a different coating that was substantially more expensive than ZXP3.

So, when Casteel met with Muransky in 2014 to inform him of the new ZXP3 testing, "Materials was alerted that there could be trouble brewing." If ZXP3-coated rotors became available again, "disgruntled OE customers might realize that Meritor had lied to them in 2010-2011 and had been needlessly overcharging them." To avoid that result, Muransky concocted a sham test and prepared a fabricated report "as a pretext to permanently discredit and eliminate ZXP3."

Weinstein alleges that, based on this series of events, Meritor is liable for (1) breach of oral contract, (2) breach of written contract, (3) promissory estoppel, (4) intentional misrepresentation, and (5) business disparagement. Meritor moves to dismiss all claims.[2]

**Discussion**

**A.    Motion-to-Dismiss standard**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[3] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[4] This "demands more than an unadorned,

---

[2] Meritor first moved to dismiss because Weinstein's breach of oral and written contract and promissory estoppel claims would be barred by the statute of frauds. Meritor abandons that argument in reply, so I will not address it. *See* ECF No. 33 at 1 ("Meritor will accept, for the purposes of this motion only, [Weinstein's] position . . . that the statute of frauds does not defeat these claims.").

[3] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[4] *Twombly*, 550 U.S. at 570.

the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[5] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[6]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. First, I must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[7] Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[8] Second, I must consider whether the well-pled factual allegations state a plausible claim for relief.[9] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[10] A complaint that does not permit me to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[11] I liberally construe all pro se motions and pleadings.[12]

**B.     Choice of law**

Weinstein argues that Michigan law applies to this dispute. Meritor concedes for the purposes of this motion, but reserves the right to argue the choice of law issue in the event the complaint is not dismissed. So I analyze the complaint under both Nevada and Michigan law.

---

[5] *Iqbal*, 556 U.S. at 678.

[6] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *Id*.

[9] *Id.* at 679.

[10] *Id.*

[11] *Twombly*, 550 U.S. at 570.

[12] *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

1   **C.    Breach of oral contract and promissory estoppel**

Weinstein alleges that Meritor breached its oral contract to issue a purchase order for one 1500-gallon container of ZXP3 for $250 per gallon. Meritor argues that Weinstein does not demonstrate that any definite contract was offered and accepted. Weinstein also asserts a promissory-estoppel "claim," alleging that Meritor "promised to issue its [purchase order] to purchase [Weinstein's] anti-corrosion coating at an agreed price and payment terms."

Under Michigan law, formation of a contract requires a definite and certain offer, and a definite and seasonable acceptance.[13] Likewise, promissory estoppel requires a clear and definite promise.[14] "Mere discussions and negotiations cannot be a substitute for the formal requirements of a contract."[15] Similarly, in Nevada, a valid contract requires an offer and acceptance, meeting of the minds, and consideration.[16] "With respect to contract formation, preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms."[17] "A valid contract cannot exist when material terms are lacking or are insufficiently certain and

---

[13] *Mayfair Assocs. Ltd P'ship v. Bank One, Michigan*, 2001 WL 902736 (E.D. Mich. Jul. 20, 2001) (offer "must be definite and certain . . .") (quoting 17 Am. Jur. 2d *Contracts* § 43 (1964)); MCL 40.2207 (Michigan Uniform Commercial Code provision requiring "definite and seasonable expression of acceptance").

[14] *Lifeline Ltd. No. II v. Conn. Gen. Life Ins. Co.*, 827 F. Supp. 438, 442 (E.D. Mich. 1993) ("Because promissory estoppel substitutes for the consideration required to form a contract, the promise on which a promissory estoppel action is brought must be definite a clear.") (citing *State Bank of Standish v. Curry*, 500 N.W. 2d 104, 107 (Mich. 1993)); *see also Metro. Alloys Corp. v. Considar Metal Mktg.*, 615 F. Supp. 2d 589, 596-599 (E.D. Mich. 2009) (recognizing that Michigan law supports a independent claim for promissory estoppel, the elements of which are (1) a promise, (2) that a defendant should reasonably have expected to induce definite and substantial action, and (3) that in fact produced reliance such that the promise must be enforced to avoid injustice).

[15] *Thomas v. Leja*, 468 N.W. 2d 58, 60 (Mich. App. 1991).

[16] *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

[17] *Id.*

definite."[18] Promissory estoppel in Nevada "is intended as a substitute for consideration, and not as a substitute for an agreement between the parties."[19]

Weinstein does not allege in his complaint that he and Meritor definitively agreed on any material elements—namely the price, quantity, or subject matter—of the potential purchase order. At first, he states that Meritor, through Reidel, agreed to order one 1500-gallon container of ZXP3 for $250 per gallon. Weinstein goes on to state, however, that at the very same meeting Meritor and Weinstein discussed different price terms if Meritor would order more than three containers through one purchase order. Meritor responded that it would have to check and see if they needed a larger order, leaving the price and quantity terms uncertain. Further, at the same meeting, Meritor implied that it may be interested in ordering NanoWard® B instead, a different product than originally agreed to. The complaint does not allege that the specifics became more concrete as a result of later discussions. Indeed, the complaint alleges that, in what appears to have been late 2014 or early 2015, Meritor "had delayed issuing the [purchase order] because, the quantity discount was calculated on the total amount ordered on each [purchase order] and OE would not place its order until after choosing between [ZXP3] and NanoWard®B." Nowhere does Weinstein allege that the parties definitively agreed to any concrete terms.

Regardless of which state's law is applied, the complaint does not sufficiently allege that an oral contract or promise existed between Meritor and Weinstein. I therefore dismiss this claim with leave to amend if Weinstein can allege facts to cure these deficiencies.

**D.    Breach of written contract**

Weinstein alleges that Meritor also agreed to purchase Weinstein's "anti-rust coating in sufficient quantity to coat all of its brake rotors with cast-in ABS tone rings." He alleges that the quantity is easily calculable and will be ascertained during discovery, and the price will be calculable once the quantity is ascertained. Weinstein claims that "the representations and agreements contained in the parties' emails and other written communications when considered

---

[18] *Id.*

[19] *Vencheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989).

7

in their totality constitute a written contract" that Meritor breached when it did not purchase any coating. Weinstein did not attach as exhibits any of the emails or other written communications that he alleges constitute a contract, a deficiency he claims is a result of Meritor's refusal to comply with discovery.[20] Even if the written communications were provided, Meritor argues, the complaint affirmatively alleges that the price and quantity of this deal were not certain by conceding that these details will need to be ascertained through discovery.

Weinstein essentially alleges that Meritor agreed to a requirements contract, in that it would buy enough ZXP3 to coat *all* of a specific type of rotor. Meritor replies that, even then, Weinstein does not allege that there is a writing demonstrating that the contract's quantity is "the buyer's requirements."[21] At this motion-to-dismiss stage, I will not require that Weinstein produce all documents that he alleges form a written contract. However, the complaint does not sufficiently allege that specific writings exist to form that contract. As with his oral-contract claim, Weinstein also does not allege that Meritor and Weinstein agreed on any of the essential terms of a written contract. So I dismiss this claim with leave to amend if Weinstein can allege facts curing these deficiencies.

### E. Intentional Misrepresentation/Fraud

Weinstein alleges that Meritor intentionally misrepresented the purpose and protocols of the comparison test of ZXP3 and NanoWard® B. He claims that Muransky represented that he would use a standard specification for evaluation, but he instead used the secret MSP-105 to intentionally invalidate both products and "eliminate any ZXP3 deal." Had Weinstein known

---

[20] Weinstein filed a motion to compel initial disclosures in January 2017, which Magistrate Judge Ferenbach denied. Meritor then filed a motion to stay discovery until resolution of this motion to dismiss, which Judge Ferenbach granted.

[21] ECF No. 23 at 12 n.2 (citing *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957 (1999) (allegation that requirements contract exists "does not mean . . . that the statute of frauds' requirement of a quantity term is obviated since the inclusion of a quantity term is a mandatory requirement under the UCC . . . . While the quantity term in requirements contracts need not be numerically stated, there must be some writing which indicates that the quantity to be delivered under the contract is a party's requirements or output.")).

Meritor's "true intentions," he would have never permitted testing. He alleges that "but for [Muransky's] false and malicious report, [Meritor] would have issued its [purchase order for Weinstein's] anti-rust coating, which had already been approved for purchase."

In Nevada, to demonstrate intentional misrepresentation a plaintiff must plead facts showing "(1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance."[22] In Michigan, to demonstrate fraud,[23] a plaintiff must demonstrate "(1) that [the] defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."[24]

Weinstein's allegations do not sufficiently demonstrate damages under either state's laws. His damages theory depends on the assumption that Meritor would have certainly issued the purchase order if Weinstein refused to allow testing of his products. That conclusion is speculative at best. Indeed, another equally likely, and potentially more logical result could have been that Meritor would have still refused to issue the purchase order in the event that Weinstein refused to allow testing of his products. Weinstein's theory lacks plausibility.

However, in his response to Meritor's motion to dismiss, Weinstein expands the number of misrepresentations that he contends he relied on for this claim, and he provides an account of damages he claims that he suffered from those misrepresentations.[25] While I acknowledge that a plaintiff cannot fix defects in his complaint by saying something different in his opposition

---

[22] *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).

[23] Fraud is the equivalent of intentional misrepresentation in Michigan.

[24] *Lawrence M. Clarke, Inc. v. Richo Const., Inc.*, 803 N.W.2d 151, 162 (Mich. 2011).

[25] *See* ECF No. 30 at 14–16.

9

brief,[26] Weinstein adds enough detail to imply that he can potentially amend his complaint to state an intentional misrepresentation claim. I therefore dismiss this claim and give him leave to amend his complaint to include those additional misrepresentations in it.

**F.     Business disparagement**

Finally, Weinstein alleges that Meritor told customers that ZXP3 had failed Meritor's test and "did not protect the brake rotors from corrosion and would not be offered again." He claims that Meritor knew this statement was false and intentionally made the statements to prevent Weinstein from marketing his products.

In Nevada, to succeed on a claim of business disparagement, the plaintiff must show "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages."[27] A business-disparagement claim requires the plaintiff to show that the defendant's disparaging comments are the proximate cause of the economic loss, which may be shown through a general decline in business.[28] Weinstein does not allege that he suffered any special damages or economic loss from Meritor's disparaging statements.

Meritor also argues that the "common interest" and "public interest" privileges apply to its statements to customers. I do not consider those arguments at this motion-to-dismiss stage because that analysis involves fact-intensive questions of whether Meritor and its customers in fact do share a common interest under that privilege, and whether Meritor was actually acting in the public interest when it allegedly disparaged Weinstein's products. Nevertheless, because Weinstein does not sufficiently plead special damages, I dismiss this claim with leave to amend.[29]

---

[26] *Zander v. Tropicana Entertainment, Inc.*, 2014 WL 794212, at *2 n.1 (D. Nev. Feb. 26, 2014).

[27] *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009) (footnote omitted).

[28] *Id.*

[29] Despite Weinstein's contention that this case should be decided under Michigan law, he defends this claim using only Nevada law. This is perhaps because Michigan law does not

### G. Leave to amend

Because I am not yet convinced that Weinstein can plead no set of facts that would entitle him to relief, he is granted leave to file an amended complaint. If Weinstein chooses to file an amended complaint, he is cautioned that an amended complaint supersedes the original complaint and, thus, the amended complaint must be complete in itself.[30] Weinstein's amended complaint must therefore contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit and be labeled "Second Amended Complaint." If Weinstein chooses to file an amended complaint, he must do so by **October 30, 2017.** If he does not file an amended complaint by this deadline, this case will be closed without further prior notice.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Meritor's motion to dismiss **[ECF No. 23] is GRANTED**. Weinstein has until October 30, 2017 to file an amended complaint if he can cure the defects identified in this order.

DATED: September 28, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

recognize a "business disparagement" tort. Its closest analog is "injurious falsehood."

[30] *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that, for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).